OPINION OF THE COURT
Thomas F. McGowan, J.
The novel issue presented is whether the inability of the People to produce at a suppression hearing the first photo array shown to an eyewitness, from which no identification was made, requires a finding that the People have failed to meet their burden of going forward with evidence to show that an identification by the same eyewitness from another photo array was not tainted. This court holds that it does not.
Within one week of a burglary at his home, John Sinclair viewed an array consisting of from 6 to 12 photos. He made no identification at that time. Weeks later he was shown another array and without hesitation identified defendant’s photo. At the suppression hearing, the People failed to produce the first array or a police witness to testify that defendant’s photo was not included. Sinclair did testify, however, that defendant’s photo was not among those in that first batch.
In People v Nelson (79 AD2d 171) the Fourth Department held an identification to be inadmissible because the People had failed to produce at the suppression hearing the photo array from which the witness identified the defendant. The instant case is distinguishable. There was no *758 identification from the first photo array. The second photo array, in and of itself, was not suggestive.
There may be any number of suggestive influences at work when an identification is made from a photo array. These factors can best be explored at the suppression hearing by production of all photos used. Here, however, there is only one possible source of taint — the chance that the eyewitness saw defendant’s photo twice, in the first as well as the second photo array.
There is no reason that the testimony of the identifying witness, John Sinclair, concerning this possibility, should not be sufficient to sustain the People’s burden of going forward (see People v Sutton, 47 AD2d 455). The danger in showing a photo twice is not so much that the eyewitness will select the photo he has seen before without realizing that he does so because he has seen it. Rather, the danger is that, knowing he has seen it twice, he will ratify what he perceives to be the result desired by the police. Here, John Sinclair’s testimony was unequivocal. He had only seen a limited number of photos the first time. He remembered that these were of young black males, ages 18 to 35. Defendant’s photo, the one he picked weeks later, was not among them.
The motion to suppress is therefore denied.